No. 3996.

(Court of Appeal, Parish of Orleans.)

# NEW ORLEANS EXPORT COMPANY vs. TEXAS AND PACIFIC RAILROAD COMPANY.

The responsibilities of the carrier and of the warehouseman are very different and therefore, a person may, in the character of carrier, bé liable for a loss from which in the character of warehouseman he would be exempted; but whether as a carrier charged with extraordinary care of the commodity intrusted to his charge, or whether as a warehouseman on whom is imposed the obligation only of common or reasonable care, he is, is either character, responsible for the loss if it be occasioned by his fault.

Appeal from Civil District Court, Division "E."

W. S. Parkerson, for Plaintiff and Appellee.

Howe, Spencer & Cocke, L. DePoorter, for Defendant and Appellant.

MOORE, J. This was a suit for damages resulting from the non-delivery of a lot of cotton seed cake entrusted to the defendant railroad for carriage from certain intermediate points on defendant's road, to its southern terminals, its wharfs at Westwego, opposite the City of New Orleans.

The answer denies responsibility on the part of defendant as a common carrier forasmuch as it had duly transported the merchandise to destination and had unloaded and placed upon its wharfs at Westwego, the entire consignments; and it avers that hence its responsibility is to be measured by that of a warehousman. For defense it is urged "that on the 5th day of March, 1903, and whilst the cotton seed cake was still on the wharf aforesaid awaiting foreign shipment by plaintiff, the wharf, by a fortuitous event and without any fault or neglect on the part of defendant and by action of the enormous and extraordinary flood of the Mississippi River, was suddenly undermined and caved and part of it went into the river carrying with it the entire lot of cotton seed cake, as aforesaid, which was rendered a total loss."

There was judgment in favor of the plaintiff for $1873.33, the

value of the cake, and defendant appeals.

The case comes up to us on a stipulation of all the facts, save as to the cause, or causes which operated to the caving in of the wharf. This latter, however, is shown by evidence ore tenas.

"The plaintiff was the owner of 91 sacks of cotton seed cake, shipped from Boyce, Louisiana, to Westwego, Louisiana; January 17th, 1903; 29 sacks of which were shipped in Texas and Pacific car No. 6464, and 63 sacks of which were shipped in Texas and Pacific car No. 10,014, shipped on the same day to Westwego, Louisiana.

"That plaintiff was also the owner of 228 sacks of cotton seed cake shipped from Vidalia, Louisiana, on January 28th, 1903, to Westwego, Louisiana, in Missouri Pacific car No. 19,691, and of 149 sacks of cotton seed cake shipped from Vidalia, Louisiana, on January 26th, 1903, to Westwego, Louisiana, in Missouri Pacific car No. 12,279, and also of 191 sacks of cotton seed cake shipped from Vidalia, Louisiana, on February 2nd, 1903, to Westwego, Louisiana, in Missouri Pacific car No. 15,587.

"That said cars arrived at Westwego, Louisiana; the plaintiff was notified of said arrivals; the freight thereon was paid by the plaintiff, and the cars unloaded on the dates hereinafter set forth, to-wit:

| Car. No. | Arrived at Westwego. | Date notification. | Date freight paid. | Date unloaded on wharf. |
|---|---|---|---|---|
| T. & P. 6464 | Jan. 21 | Jan. 22 | May 21 | Jan. 25 |
| T. & P. 10014 | Jan. 21 | Jan. 22 | May 21 | Jan. 25 |
| M. P. 19691 | Feb. 5. | Notice mailed Feb. 8. | Freight prepaid March 3. | |
| M. P. 12279 | Feb. 31. | Notice mailed Feb. 3. | Freight prepaid March 2. | |
| M. P. 15587 | Feb. 10. | Notice mailed Feb. 13. | Freight prepaid March 3. | |

"That all of the cotton seed cake herein mentioned, which constituted a part of the total shipments in said cars, was lost in the Mississippi River on March 5th, 1903, at 6 o'clock p. m.,

by the caving in of the wharf at Westwego on which same had been unloaded for delivery to ships. The balance of the shipment was duly delivered to the plaintiff or its order.

"That the part so lost was worth the sum of $1,873.33.

"That the only question of fact not agreed on herein, is whether the defendant was responsible for the caving in of the wharf and the consequent loss of this cotton seed cake, and on this question evidence can be taken."

The evidence is to the effect that the defendant had built a line of wharfs at Westwego, some 3700 feet in length and projecting from the bank some distance over the river. The wharfs were supported on the river side by piling from 75 to 80 feet long, driven into the river bed to a depth of from 25 feet to 30 feet.

The upper end of the line of wharfs, and embracing a space thereof of some 600 feet and known as wharf No. 2, is enclosed and roofed and thus converted into a warehouse.

It is this space, or rather a portion of it to the extent of 200 feet, which went into the river on the occasion stated in the stipulation, *supra*.

It appears that the bed of the river at this point fills quite rapidly and that the defendant company, at every low stage of the river, resorts to the process, as it is called, of "cleaning it out," which means simply that the deposit is removed and dispersed by means of powerful tugs employed for that purpose. The last "washing out" prior to the day the wharf caved, was on Sept. the 8th, 1902. At that time the record of soundings made by defendant shows that the depth of water prior to the river bed being washed out, was (between posts 29 and 41, and which comprehends the space occupied by the warehouse,) from 19 to 24 feet, or an average of 20 4-19 feet along the entire length; that the washing out was for the purpose of obtaining a depth of at least 30 feet of water and that the object was "to prevent caves in low water, from the bank sliding in," as testified to by the superintendent of defendants terminals.

It is not shown what depth was obtained after the river bed was "washed out," but it is shown that the soundings taken the

483

day after the accident revealed 70 feet of water "in the middle of the cave." The river at this time (March 5th, 1903) had risen to its greatest height and there was no "enormous and extraordinary flood." Neither was there any cave of the bank nor any likelihood of a cave, forasmuch as it is conclusively established by the defendant's own witnesses that not only was the bank at this point not a caving bank," but on the contrary was a "making bank," one which was strengthened year by year by the deposit from the river.

It is testified to by all of defendant's witnesses that the collapse of the wharf was due to the undermining of the pilings. The pilings on the outside, that is to say the pilings on the water front on the wharf, rose from their sockets in the river bed, with their heels pointing to the opposite bank of the river and, still clinging to the wharf, pulled the latter forward into the river with the freight piled thereon and carried with it a portion of the bank behind. What occasioned the undermining of the pilings?

The evidence convinces us as it did the judge of the District Court, that the "washing out" had loosened the pilings from the bed of the river to such an extent that they were not able to withstand the pressure of the water after the river had risen to the height it had on the 5th March.

The defendant has thus not only not shown that the loss occurred without its fault, but the evidence of its witnesses in our appreciation, shows conclusively that the accident to the wharf was the direct result of the defendants imprudence or want of skill in cutting or washing away from the pilings, the support and strength which the deposit from the river had given them so as thus to support the pressure of a rising river.

Having concluded that the defendant was in fault, we are thus relieved of the necessity of deciding in which character it is chargeable—whether as a common carrier, or as a warehousman—a question which, under some circumstances, becomes a matter of great nicety.

Whilst the responsibilities of the carrier and of the warehouseman, it may be conceded, are very different and that, therefore, a person may, in the character of a carrier, be liable for a loss, from which he would be exempted in the character of the other,

yet it may also be doubted that, whether as a carrier charged with extraordinary care of the commodity intrusted to his charge or whether as a warehouseman cn whom is imposed only the obligation of common or reasonable care, he is responsible in either character if the loss is occasioned by his fault.

The defendant is responsible for the accident and therefore must answer for the loss.

The judgment appealed from is affirmed.

June 18th, 1906.

Rehearing refused, June 28, 1906.

Writ refused by Supreme Court Aug. 17, 1906.